United States District Court
Southern District of Texas
**ENTERED**
November 09, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| 9000 AIRPORT LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:23-CV-03131 |
| | § | |
| GLENN HEGAR, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Before the Court is the plaintiff's, 9000 Airport LLC, motion for preliminary injunction (DE 4). The defendant, Glenn Hegar, as Comptroller of Texas, has responded (DE 14) and the plaintiff has replied (DE 15). After reviewing the motions, the pleadings, the record, and the applicable law, the Court determines that the plaintiff's motion should be **GRANTED**.

### II. FACTUAL BACKGROUND

In 2007, the Texas Legislature instituted the Sexually Oriented Business Fee Act ("the SOBF"). Tex. Bus. & Com. Code §§ 102.051-.056. The Act imposes a $5 fee per customer entry on "sexually oriented businesses" ("SOBs"). To trigger the fee, the SOBs must feature both live nude entertainment and on-premises alcohol consumption. *Id*. The statute defines "nude" as being entirely unclothed or being clothed in any manner that exposes any portion of the breast below the top of the areola (for women) or any portion of the genitals or buttocks. *Id*. at § 102.051(1).

1 / 20

The SOBF's stated purpose is to dedicate funds to "the sexual assault program fund, to cover the costs of programs that relate to sexual assault prevention, intervention and research provided by state, local and nonprofit agencies." House Committee on Ways & Means, Committee Report on Committee Substitute House Bill 1751, 80th Leg., R.S., at 1 (Tex. 2007). These programs include: "(1) sexual violence awareness and prevention campaigns; (2) victims of human trafficking; (3) sexual assault nurse examiner programs; (4) increasing the level of sexual assault services in this state; (5) victim assistance coordinators; and (6) technology in rape crisis centers." Senate Research Center (Engrossed), House Bill 3345 Bill Analysis, 88th Leg., R.S., at 1 (Tex. 2023). The statute directs the Comptroller to deposit the fees extracted under the SOBF to the sexual assault program fund ("The Fund"). The Comptroller adopted 34 TAC § 3.722 to implement the fee.

The SOBF also requires recordkeeping and inspection requirements. An SOB must "record daily in the manner required by the comptroller the number of customers admitted to the business. The business shall maintain the records for the period required by the comptroller and make the records available for inspection and audit on request by the comptroller." Tex. Bus. & Com. Code § 102.052(b).

In September of 2023, the Texas legislature doubled the fee to $10 per customer-entry via House Bill 3345, which amends the SOBF—specifically, Tex. Bus. & Com. Code § 102.052(a). The House Appropriations Committee Report on House Bill 3345 explains the background and purpose of the amendment:

> Unpredictable revenues from court fees and stagnant fees imposed on sexually oriented businesses coupled with increasing demand for services and resulting appropriations have caused a structural deficit leading to the potential depletion of revenues to support these services. H.B. 3345 seeks to allow for more predictable revenue to support state services to victims of sexual assault, human trafficking, and domestic abuse . . . by allowing the legislature to revisit the amount of the sexually oriented business fee every two years during the budgeting process.

House Committee on Appropriations, Committee Report on House Bill 3345, 88th Leg., R.S., at 1 (Tex. 2023). Representative Greg Bonnen, who introduced H.B. 3345, explained that reduced court activities during COVID significantly diminished the Fund.[1] And during a Texas Senate Finance Committee hearing, Senator Huffman, a sponsor of H.B. 3345, noted that "[we] have struggled to keep this fund current. They've fallen in recent years."[2] She added that increasing the fee on SOBs "seemed like a reasonable addition to me, considering inflation and other issues."

The plaintiff, 9000 Airport LLC, is an adult nightclub that opened in September of 2023. The club features costumed dancers who strip down to nudity, allegedly conveying messages of eroticism and the beauty of the body. The plaintiff operates as a "bring your own beer" establishment, allowing customers to bring and drink alcohol. The plaintiff believes that it is subject to the SOBF, and therefore must pay the $10 per-entry fee. The plaintiff sued the Comptroller and brought this motion to preliminarily enjoin the Comptroller from enforcing H.B. 3345, the SOBF itself, and the regulations implementing the SOBF.

---

[1] https://tlchouse.granicus.com/MediaPlayer.php?view_id=78&clip_id=24547 (April 17, 2023) Appropriations Hearing, beginning at 13:25) (last accessed November 6, 2023).
[2] https://tlcsenate.granicus.com/MediaPlayer.php?clip_id=17875 (May 8, 2023) Texas Senate Finance Committee Hearing, beginning at 03:11) (last accessed November 6, 2023).

### III.  CONTENTIONS OF THE PARTIES

The plaintiff argues that the SOBF and H.B. 3345 violate its First, Fourth, and Fourteenth Amendment rights. The plaintiff maintains that it is likely to succeed on the merits of its First Amendment claim because the SOBF is content-based, not aimed at secondary effects, overly broad, not narrowly tailored, and unsupported by evidence. The plaintiff also argues that its Fourth Amendment claim will likely succeed because SOBs are not closely regulated and the SOBF's inspection scheme is unreasonable. The plaintiff asserts that First Amendment violations always constitute irreparable injury, and this injury outweighs any harm that an injunction inflicts upon the State. Finally, the plaintiff insists that an injunction will serve the public interest.

The Comptroller retorts that the SOBF is not content-based. He argues that it is focused on mitigating the secondary effects of the plaintiff's expression, rather than the expression itself. The Comptroller urges the Court to defer to the Supreme Court of Texas' interpretation that the SOBF is content-neutral and passes intermediate scrutiny. He insists that the requirement that alcohol must be consumed on the premises disarms any argument that the statute targets nude dancing. The Comptroller further argues that the plaintiff's Fourth Amendment claims fail because the recordkeeping and inspection requirements are not Fourth Amendment searches, and the "closely regulated industry" exception applies to the SOBF. Finally, he insists that the public interest demands continued enforcement of the SOBF.

## IV.  STANDARD OF REVIEW

A preliminary injunction is an "extraordinary remedy." *Byrum v Landreth*, 566 F.3d 442, 445 (5th Cir. 2009). A federal court may grant a preliminary injunction only if the movant shows: (i) a substantial likelihood of success on the merits; (ii) a substantial threat of irreparable harm; (iii) that the movant's substantial injury outweighs the threatened harm to the defendant; and (iv) an injunction is in the public interest. *Tex. Med. Providers Performing Abortion Servs. v. Lakey,* 667 F.3d 570, 574 (5th Cir. 2012).

The plaintiff challenges the SOBF both facially and as-applied. Facial challenges are generally disfavored. *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013). But the standard for facial challenges in First Amendment cases is unique: "A law implicating the right to expression may be invalidated on a facial challenge if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Id.* at 387 (quoting *United States v. Stevens,* 559 U.S. 460 (2010)). Because the parties generally agree as to where and when the statute applies,[3] there is no allegation that some applications are constitutional while others are not. Despite the plaintiff's assertion that it also brings an as-applied challenge, its motion addresses a simple question: whether the SOB fee is constitutional, regardless of the SOB's particular circumstances.

---

[3] This excepts the plaintiff's overbreadth claim, which this analysis does not address for reasons explained below.

## V. ANALYSIS & DISCUSSION

Before proceeding to the four elements in the preliminary injunction analysis, the Court must address two issues raised by the Comptroller. At oral argument, the Comptroller alluded to *res judicata* barring the plaintiff's claims. The Comptroller did not mention *res judicata* in his motion to dismiss, which he filed in lieu of an answer (DE 13). The Comptroller may have been inspired by the Fifth Circuit's acknowledgment in *Texas Ent. Ass'n, Inc. v. Hegar* that any claim attacking the SOBF itself was barred by *res judicata*. *Texas Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 508 (5th Cir. 2021), *cert. denied* (2022). The plaintiff did not actually attack the SOBF itself in that case, because it had previously attempted just that in *Combs v. Texas Ent. Ass'n, Inc.*, 347 S.W.3d 277 (Tex. 2011). In *Combs*, the Supreme Court of Texas held that the SOBF was aimed at secondary effects rather than the plaintiff's expression. The statute was therefore entitled to intermediate scrutiny, which it passed. But *Combs* does not preclude the plaintiff from bringing this lawsuit. The plaintiff before this Court is neither the Texas Entertainment Association nor a member of that association. Furthermore, the Comptroller has not persuasively argued that the plaintiff's interests were adequately represented by the Texas Entertainment Association in *Combs*. Accordingly, to the extent the Comptroller argues that *res judicata* bars the plaintiff's claim, the argument fails.

Comity concerns do not wrest this case from the Court's jurisdiction, either. At the core of the Court's Article III judicial power is "the federal courts' independent

responsibility—independent from its coequal branches in the Federal Government, and independent from the separate authority of the several States—to interpret federal law." *Williams v. Taylor*, 529 U.S. 362, 378–79 (2000). As the Fifth Circuit stated in *Hegar*, the "claims alleged by TEA rest wholly on rights guaranteed by the federal Constitution." *Hegar*, 10 F.4th at 508 (5th Cir. 2021). This Court's jurisdiction arises from the federal questions at stake. Thus, while the Court respects the thoughtful decision of the Texas Supreme Court, this federal Court has an independent duty to examine the plaintiff's federal constitutional rights for itself.

> *A. Likelihood of Success on the Merits*
>
> *A. 1) First Amendment Claim*

To show its likelihood of success on the merits, the plaintiff's evidence in the preliminary injunction proceeding need only establish a *prima facie* case. The plaintiff "is not required to prove its entitlement to summary judgment." *Byrum v. Landreth*, 566 F.3d 442, 446 (5th Cir. 2009).

Nude dancing is expressive conduct protected by the First Amendment. *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 565 (1991). But because it falls only within the "outer ambit" of that protection, nude dancing is subject to restrictions. *City of Erie v. Pap's A. M.*, 529 U.S. 277 (2000). The first step in a First Amendment analysis is determining whether the challenged restriction is content-based. *Texas Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 509 (5th Cir. 2021), *cert. denied* (2022). If so, it is presumptively unconstitutional and examined under strict scrutiny. Strict scrutiny "requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Citizens United v. Fed. Election*

*Comm'n*, 558 U.S. 310, 340 (2010). If the statute is content-neutral, it enjoys intermediate scrutiny and carries no presumption of unconstitutionality:

> If the governmental purpose in enacting the ordinance is unrelated to . . . suppression, the ordinance need only satisfy the 'less stringent,' intermediate *O'Brien* standard . . . If the governmental interest is related to the expression's content, however, the ordinance falls outside O'Brien and must be justified under the more demanding, strict scrutiny standard.

*Pap's A. M.*, 529 U.S. at 278. The inquiry into whether a restriction is content-neutral "requires courts to verify that the 'predominate concerns' motivating the ordinance 'were with the secondary effects of adult [expression], and not with the content of adult [expression].'" *City of Los Angeles v. Alameda Books, Inc.,* 535 U.S. 425, 440–41 (2002) (quoting *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47-54 (1986)).[4] The Comptroller argues that the SOBF is aimed only at the secondary effects of nude dancing. "Thus, to determine whether [the SOBF] is content based or content neutral, we must look to its purpose as substantiated by the record." *Hegar*, 10 F.4th at 510.

### A.  1) a) Secondary Effects Do Not Justify Content-Based Fees

Neither the record nor the law supports the Comptroller's secondary effects argument. The secondary effects argument suffers from multiple defects, but the most fundamental is that the fee does not fit into the permissible categories of

---

4 Although its viability was in some doubt, a recent Fifth Circuit case clarifies that the secondary effects doctrine remains intact. *Ass'n of Club Executives of Dallas, Inc. v. City of Dallas, Texas*, 83 F.4th 958, 964-965 (5th Cir. 2023). *But see Reagan Nat'l Advert. of Austin, Inc. v. City of Austin*, 972 F.3d 696, 703 (5th Cir. 2020), *rev'd and remanded sub nom. City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61 (2022).

restriction. The First Amendment permits restrictions only on the time, place, or manner of protected expression in a secondary effects case:

> [R]egulations enacted for the purpose of restraining speech on the basis of its content presumptively violate the First Amendment . . . On the other hand, so-called 'content-neutral' *time, place, and manner* regulations are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication.

*City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47 (1986) (emphasis added). The Court need not infer a corollary that restrictions beyond time, place, and manner violate the First Amendment. Justice Kennedy, writing as the controlling opinion in *City of Los Angeles v. Alameda Books, Inc.*, under the *Marks* doctrine,[5] feared a "subtle expansion" in the plurality's upholding a statute that prohibited multiple adult businesses from operating out of a single building. *Alameda Books,* 535 U.S. at 440–41. After endorsing time, place, and manner restrictions, Justice Kennedy wrote:

> On the other hand, a city may not regulate the secondary effects of speech by suppressing the speech itself. A city may not, for example, impose *a content-based fee* or tax . . . This is true *even if the government purports to justify the fee by reference to secondary effects*.

*Id.* at 445 (Kennedy, J., concurring) (emphasis added). The SOBF fits squarely into the example of what is not allowed by Justice Kennedy's controlling opinion. A per-customer-entry fee is not a time, place, or manner restriction. Indeed, *the Comptroller does not even argue that the SOBF is a time, place, or manner restriction.* Nor does he

---

[5] "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" *Marks v. United States*, 430 U.S. 188, 193 (1977).

cite Supreme Court or Fifth Circuit precedent upholding such fees. For this reason alone, the SOBF likely violates the First Amendment.

The Comptroller does not address *Alameda Books* or *Renton*. In fact, between his Response Motion and his Motion to Dismiss, the Comptroller spends only one paragraph arguing that the SOBF is not content-based (DEs 13 & 14). The Comptroller argues that the SOBF's application only to live nude entertainment where alcohol is consumed proves that it is content-neutral; it is not the nude dancing that is the statute's focus, but the secondary effects of the combination of nude dancing and alcohol. But this does not immunize the statute. First, a statute cannot shield itself from targeting a protected behavior by requiring an additional behavior for the statute to trigger. Requiring a second attribute that almost always attends the first attribute changes the number of words in the statute, but it does not change its constitutionality. Second, the Comptroller offers no explanation as to why the combination of alcohol and nude dancing creates worse secondary effects than nude dancing alone. Absent an explanation, the alcohol requirement does little to dispel the appearance that the statute is targeted at nude dancing.

*A. 1) b) Raising Revenue Is Not a Sufficient Government Interest*

*Alameda Books* is not the only Supreme Court precedent the SOBF runs afoul of. In *Minneapolis Star,* the Supreme Court held that the State's interest in raising revenue cannot justify targeting specific types of businesses:

> The main interest asserted by Minnesota in this case is the raising of revenue. Of course that interest is critical to any government. Standing alone, however, it cannot justify the special treatment of [a targeted business], for an alternative means of achieving the same interest without raising concerns under the First Amendment is clearly available: the State could raise the revenue by taxing businesses generally.

*Minneapolis Star & Trib. Co. v. Minnesota Com'r of Revenue*, 460 U.S. 575, 586 (1983) (emphasizing that its holding did not rely on an improper censorial motive). The Court in that case did not address levels of scrutiny or determine whether the statute was content-based. Instead, it determined that because the problem arose "directly under the First Amendment . . . the regulation can survive only if the governmental interest outweighs the burden and cannot be achieved by means that do not infringe First Amendment rights as significantly." *Id.* at 585 n.7.

Like *Alameda Books*, the Comptroller's briefs do not even mention *Minneapolis Star*. Regardless, the government's interest in raising revenue does not outweigh the plaintiff's burden. The SOBF's stated purpose is to dedicate funds to "the sexual assault program fund, to cover the costs of programs that relate to sexual assault prevention, intervention and research provided by state, local and nonprofit agencies." House Committee on Ways & Means, Committee Report on Committee Substitute House Bill 1751, 80th Leg., R.S., at 1 (Tex. 2007). By its own terms, the SOBF's purpose is to raise money. The fact that the SOBF raises money for a cause

related to the expression does not alter *Minneapolis Star*'s prohibition against targeting specific expression for the purpose of raising money.[6]

The SOBF as amended by H.B. 3345 fares even worse. Its stated purpose is "to allow for more predictable revenue" due to factors utterly unrelated to the targeted expression: Covid, fund depletion, and inflation. House Committee on Appropriations, Committee Report on House Bill 3345, 88th Leg., R.S. at 1 (Tex. 2023). It neither mentions the secondary effects of the targeted expression nor offers a justifiable State interest. This is not narrow tailoring.

At first blush, the fact that the stated purposes of the SOBF and H.B. 3345 do not connect to the expression's effects might suggest that the SOBF does not target the expression itself. But this disconnect undermines the secondary effects argument. This is the Scylla and Charybdis a legislature must navigate: target an effect caused by the expression, but not the expression itself. Raising revenue does not clear the strait successfully because it does not address a secondary effect. The State's interest in revenue—even if taken sincerely and not as a pretext for targeting expression—cannot justify such a targeted fee. *Minneapolis Star*, 460 U.S. at 586.

A. 1) c) *The Theoretical Connection Is Unexplained*

Looking past the SOBF's stated purpose to those offered by the Comptroller does not save the statute. Putting *Minneapolis Star* aside, these alternative purposes—even if they are believed—still suffer the same problem: the connection

---

[6] This assumes, for the sake of argument, that the Fund's programs are in fact related to the expression. But as explained below, neither the legislative history nor the Comptroller show that they are related.

between the expression, the secondary effect, and the restriction goes unexplained. For example, the Comptroller argues that the fee pays for programs that mitigate the secondary effects of the expression—"the dangerous combination of nudity and alcohol" (DE 13). This may well be a dangerous combination, but the Comptroller does not explain *why* it is dangerous. The closest the Comptroller comes to connecting the expression and the secondary effects is the unadorned conclusion that "[t]he combination of live nude entertainment and alcohol is a well-documented prescription for rape, sexual assault, and other crimes and social ills." (DE 13). But again, the Comptroller does not say why or how this combination leads to these ills. Nor does he explain how the Fund's programs would mitigate them. Simply put, the Comptroller does not connect the dots.

Instead, the Comptroller cites generally to the legislative record, a review of which sheds no light. The only other support he offers is the dissent to the reversed Court of Appeals case in *Combs v. Texas Ent. Ass'n, Inc.*, 287 S.W.3d 852, 875 (Tex. App. 2009), *rev'd,* 347 S.W.3d 277 (Tex. 2011). But that dissent simply assumes connections between the expression and effects, and the remediation of that exploitation through the fees. The dissent does not cite to anything in the legislative record suggesting such connections exist or that the legislators considered empirical evidence when finding these connections. And despite the fact that "[t]he combination of live nude entertainment and alcohol is a well-documented prescription for rape, sexual assault, and other crimes and social ills," the Comptroller provides none of this abundant documentation.

### A. 1) d) *The Comptroller Offers No Evidence*

This leads to the second problem with the Comptroller's alternative purposes. Even if he articulated a specific connection between the expression and the secondary effects, he has not adduced supporting evidence. This alone is fatal. The Comptroller argues that there "is no requirement that a statute passed by a state legislature be backed by 'valid empirical information' or that it be supported by any specific type of 'data and information.'" (DE 13). This is not the law. "An SOB regulation is 'designed to serve a substantial government interest' when the municipality can 'provid[e] evidence that supports a link' between the regulated business and the targeted secondary effects." *Ass'n of Club Executives of Dallas, Inc. v. City of Dallas, Texas*, 83 F.4th 958, 965–66 (5th Cir. 2023) (quoting *Alameda Books*, 535 U.S. at 434, 437). "A municipality may rely on evidence 'reasonably believed to be relevant,' . . . but not on 'shoddy data or reasoning' that does not 'fairly support' the ordinance's rationale." *Id.* (quoting *Alameda Books*, 535 U.S. at 438) (citations omitted). The Comptroller has not produced shoddy data or reasoning; he has not produced any at all. Instead, the Comptroller relies on vague causal intuitions. Such intuitions do not show that the regulation is designed to serve a substantial government interest.

The Fifth Circuit observed a similar fatal deficiency regarding a different aspect of the SOBF. In *Texas Ent. Ass'n, Inc. v. Hegar*, the Fifth Circuit addressed the Comptroller's rule interpreting the SOBF's definition of nudity.[7] The Fifth Circuit held that "[[t]he Comptroller does not provide *any* evidence that shows that the

---

[7] The Fifth Circuit explicitly stated that the SOBF itself was not before it. *Id.*

14 / 20

Comptroller was 'predominantly motivated by ... the control or reduction of deleterious secondary effects.'" *Texas Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 511 (5th Cir. 2021), *cert. denied,* 142 S. Ct. 2852 (2022) (quoting *MD II Ent., Inc. v. City of Dallas*, 85 F.3d 624 (5th Cir. 1996)). The Fifth Circuit therefore affirmed the district court's determination that "'[b]ecause the Comptroller enacted the amended regulation at issue without reference or concern for mitigating any identified secondary deleterious effects, the [c]ourt is forced to conclude the amendment is directed at the essential expressive nature of the latex clubs' business, and thus is a content[ ]based restriction.'" *Id*. The Comptroller does not offer evidence that the legislature was predominately motivated by secondary effects in this case, either. His argument here suffers the same defect as in *Hegar*. The same conclusion is compelled.

*Hegar* offers still more guidance. Even though *Hegar* addressed a rule interpreting only a part of the SOBF, the Comptroller attempted to justify his rule by relying on evidence that purportedly justified the SOBF itself. *Id*. The Fifth Circuit rejected this argument for the same reason this Court must reject it: "with nothing in the record to support it, his argument remains only a theory." *Id.* at 511–12. In other words, nothing in the record substantiated the SOBF's connection to secondary effects. In this case, the record is equally silent. "With nothing in the record to support it, his argument [still] remains only a theory." *Id*.

Finally, H.B. 3345 suffers from one more flaw that *Hegar* identifies: "[T]he Comptroller offered no evidence to show that [the legislature] even considered the data linking the SOBF with adverse secondary effects produced by nude dancing

15 / 20

when he promulgated the Clothing Rule." *Id.* at 512. The Comptroller has not shown that the legislature considered this data when doubling the SOBF's fee, either. Indeed, he has not shown that relevant data even exists.

To sum up, the SOBF is likely 1) not a permissible time, place, or manner restriction; 2) not justified by a legitimate State interest; and 3) not adequately explained by theory or evidence. Compelled by United States Supreme Court and Fifth Circuit precedent, the Court concludes that the SOBF is not aimed at secondary effects. It is therefore content-based and subject to strict scrutiny. The Comptroller has not shown that the SOBF is narrowly tailored to a compelling government interest, nor has the Comptroller dispelled the presumption of unconstitutionality. Accordingly, the plaintiff has shown that its First Amendment claim is likely to succeed on the merits.[8]

*A. 2) Fourth Amendment Claims*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." It also states that "no Warrants shall issue, but upon probable cause." But "[s]earch regimes where no warrant is ever required may be reasonable where special needs ... make the warrant and probable-cause requirement impracticable." *City of Los Angeles, Calif. v. Patel*, 576 U.S. 409, 420 (2015) (internal quotations omitted). One special need arises when the relevant industry is "closely regulated." *Id.* The SOBF

---

[8] The plaintiff also argues that the statute is unconstitutionally overbroad. Because the plaintiff has multiple avenues to success on the merits, the Court need not reach this argument at this time.

16 / 20

authorizes the Comptroller to inspect SOBs without a warrant or probable cause. Tex. Bus. & Com. Code §102.052(b) & 34 TAC § 3.722.

The Comptroller first argues that the SOBF's recordkeeping requirements do not constitute a search because criminal penalties are not at stake. Criminal penalties are not the test of a Fourth Amendment search: "the Fourth Amendment prohibition against unreasonable searches protects against warrantless intrusions during civil as well as criminal investigations." *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312 (1978). Accordingly, the recordkeeping and reporting components of the SOBF must fall within an exception to the Fourth Amendment.

The Comptroller argues that SOBs fall within the "closely regulated industry" exception. They do not. Eight years ago, the Supreme Court wrote that "[o]ver the past 45 years, the Court has identified only four industries that have such a history of government oversight that no reasonable expectation of privacy . . . could exist for . . . such an enterprise." *Patel*, 576 U.S. at 424 (refusing to classify hotels as a regulated industry) (internal quotations omitted). The Court held that "[s]imply listing" the four closely regulated industries—liquor sales, firearms dealing, mining, and running an automobile junkyard—"refutes [the] argument that hotels should be counted among them." *Id*. The same act of "simply listing" the closely regulated industries refutes the argument that SOBs should be included in this quaternity.

The Court declines the Comptroller's invitation to add a fifth industry to this "narrow exception." *Id*. The Comptroller's only argument is the conclusion that "[b]ased on a substantial history of regulation, sexually oriented business are within

a 'closely regulated industry' for Fourth Amendment purposes," buttressed by a citation to the nude dancing restrictions that the Supreme Court upheld in *City of Erie v. Pap's A.M.*, 529 U.S. 277 (2000) (DE 13). But *Pap's* did not even mention the Fourth Amendment, let alone the closely regulated exception. Such a threadbare and unrelated argument does not overcome "'[t]he clear import of our cases . . . that the closely regulated industry . . . is the exception.'" *Patel*, 576 U.S. at 424 (quoting *Barlow's, Inc.,* 436 U.S., at 313). Accordingly, the exception does not apply.

Even if the closely regulated exception did apply, the statute would still violate the Fourth Amendment. Under the closely regulated exception, "the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant." *Id.* 426 (internal quotations omitted). Neither the statute nor the related Administrative Code addresses this requirement. Tex. Bus. & Com. Code 102.052(b) & 34 TAC 3.722 authorize the Comptroller to search and inspect an SOB's private records "upon request," without any limits on how often or when he may inspect those records. The Comptroller does not dispute this. Instead, he argues that the clarity of the statute's instructions satisfies this requirement. But clarity of how to comply with the inspection scheme says nothing about its certainty or regularity. Accordingly, the plaintiff is likely to succeed on its Fourth Amendment claim.

*B. The Plaintiff Will Suffer Irreparable Harm*

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The Comptroller does not dispute this element.

*C. Equitable Balancing*

Because the plaintiff's harm is irreparable, the Comptroller "'would need to present powerful evidence of harm to its interests to prevent'" the plaintiff from showing that the threatened injury outweighs any harm to the Comptroller or the public inflicted by an injunction.[9] *Denton v. City of El Paso, Texas*, 861 F. App'x 836, 841 (5th Cir. 2021) (quoting *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 297 (5th Cir. 2012)). The Comptroller does not present powerful evidence of harm. His response brief recites vague propositions about the State's interest in enforcing its laws. Although this is undoubtedly a critical interest, the Comptroller does not specify how enjoining the SOBF would harm the State or the public in any concrete way. Accordingly, the plaintiff also satisfies this prong.

---

[9] The last two injunction elements, "harm to the opposing party and weighing the public interest[,] merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009) (discussing the four factors of a stay, but noting the "substantial overlap between these and the factors governing preliminary injunctions."). The Court organizes the two elements separately to mirror *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279 (5th Cir. 2012) and *Denton v. City of El Paso, Texas*, 861 F. App'x 836 (5th Cir. 2021), two recent cases also addressing First Amendment preliminary injunctions.

### D. The Public Interest

"When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws." *Planned Parenthood of Greater Texas Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013). But the public does not suffer when the enjoined laws are unconstitutional. "[I]njunctions protecting First Amendment freedoms are always in the public interest." *McDonald v. Longley*, 4 F.4th 229, 255 (5th Cir. 2021), *cert. denied sub nom. McDonald v. Firth*, 142 S. Ct. 1442 (2022), and *cert. denied sub nom. Firth v. McDonald*, 142 S. Ct. 1442 (2022). Because the SOBF and H.B. 3345 are likely unconstitutional, the injunction is in the public interest.

### VI. CONCLUSION

Based on the foregoing analysis and discussion, the plaintiff has made the requisite showing for a preliminary injunction. Consequently, the plaintiff's motion is **GRANTED**. The Comptroller is hereby **ENJOINED** from enforcing House Bill 3345, the Sexually Oriented Business Fee Act itself (Tex. Bus. & Com. Code §§ 102.051-.056), and 34 TAC § 3.722.

It is so **ORDERED**.

SIGNED on November 9, 2023, at Houston, Texas.

Kenneth M. Hoyt
United States District Judge